889 P.2d 39

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–507879.**

**No. 1 CA–JV 94–0061.**

Court of Appeals of Arizona, Division 1, Department D.

Feb. 7, 1995.

Kessler & Doyle by Eric W. Kessler, Michael J. Doyle, Mesa, for appellant.

Richard M. Romley, Maricopa County Atty. by Elizabeth Burton Ortiz and Michael J. Goldstein, Deputy County Attys., Mesa, for appellee.

## OPINION

VOSS, Judge.

Appellant T.G., a juvenile, appeals the disposition order of the juvenile court in which he was first awarded to the Arizona Department of Youth Treatment and Rehabilitation (ADYTR), and thereafter placed on Juvenile Intensive Probation (JIPS). We remand this matter for clarification of the disposition order.

## FACTS AND PROCEDURAL HISTORY

On September 17, 1993, a delinquency petition was filed charging Appellant with carrying a concealed weapon. Appellant admitted to an amended count of attempted carrying of a concealed weapon. On January 13, 1994, a second delinquency petition arising from a different incident was filed, and Appellant was charged as follows: Count I, robbery with a weapon; Count II, aggravated assault; and Count III, misconduct with a weapon. A hearing on this second petition was held in juvenile court on June 3, 1994, and Appellant was adjudicated to have committed the delinquent acts charged in each of the three counts.

A consolidated disposition hearing for both petitions was held on June 23, 1994. Appellant was awarded to ADYTR for the sole count of the petition filed on September 17, 1993, and for Counts I and II of the petition filed on January 13, 1994. As for Count III of the petition filed on January 13, 1994, the juvenile court placed Appellant on JIPS, to commence "upon [Appellant's] release from the Arizona Department of Youth Treatment and Rehabilitation."

Appellant's timely appeal challenges the juvenile court's authority pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 8–241(A) (Supp.1993) to order successive dispositions based upon different counts of the delinquency petition of January 13, 1994.

## DISCUSSION

Statutory interpretation involves a question of law. *Siegel v. Arizona State Liquor Bd.*, 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991). Our review, therefore, is de novo. *Blum v. State*, 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

■ Appellant argues that the juvenile court went beyond its statutory authority by ordering a disposition from the January 13, 1994, delinquency petition that first awarded him to ADYTR and then, upon his release, placed him on JIPS. Appellant contends that although A.R.S. section 8–241(A) permits either disposition alone, it does not authorize both dispositions for the same delinquency petition. We disagree.

A.R.S. section 8–241(A) provides:

After receiving and considering the evidence on the proper disposition of the case, the court may enter judgment as follows:

. . . .

2. It may award a delinquent child:

. . . .

(b) To a probation department, subject to such conditions as the court may impose.

. . . .

(e) To the department of youth treatment and rehabilitation without further directions as to placement by that department. . . .

The powers of the juvenile court in Arizona are limited under Article VI, section 15 of the Arizona Constitution to the powers granted by the legislature. *State v. Collins*, 122 Ariz. 550, 551, 596 P.2d 385, 386 (App.1979). The legislature has limited the juvenile court to those dispositions specifically enumerated in A.R.S. section 8–241. *Id.*

To support its argument that the juvenile court can choose either disposition, but not both, Appellant relies on *In the Matter of the Appeal in Maricopa County, Juvenile Action No. J–74275*, 117 Ariz. 317, 572 P.2d 451 (App.1977) ("*J–74275*"). In that case, a juvenile adjudicated to have committed one delinquent act. In its disposition order, the juvenile court first committed the juvenile to the Department of Corrections, the predecessor of ADYTR, and then ordered the commitment suspended and the juvenile placed on probation. *Id.* at 318, 572 P.2d at 452. On appeal, the disposition order was vacated. *Id.* at 319, 572 P.2d at 453. This court held that the juvenile court exceeded its statutory authority with its dispositions, stating:

> [i]n vacating a previous order or modifying the terms of a previous order, the juvenile court acts within the confines of a single subsection of [A.R.S. section] 8–241(A)(2). In this case, by committing, suspending the commitment, and placing on probation, the juvenile court combined two of the subsections of [A.R.S. section] 8–241(A)(2) without strictly applying either. In our opinion this disposition is beyond the authority of the court.

*Id.*

*J–74275* is easily distinguishable from the present case. In *J–74275*, the juvenile was adjudicated to have committed only one delinquent act, whereas here, Appellant was adjudicated to have committed four delinquent acts, one arising from the first petition and three from the second petition. Because *J–74275* does not apply, we interpret for the first time A.R.S. section 8–241(A) in the context of multiple adjudications of delinquency.

As a general matter, the Arizona Supreme Court has recognized that the objective of the juvenile system is the protection and rehabilitation of the juvenile. *State v. Berlat,* 146 Ariz. 505, 508, 707 P.2d 303, 306 (1985); *Arizona State Department of Public Welfare v. Barlow,* 80 Ariz. 249, 252, 296 P.2d 298, 300 (1956). Applying this objective to our

analysis of A.R.S. section 8–241(A), we conclude that restricting the juvenile court to one disposition for each delinquency petition, regardless of the number of counts contained in the petition, would inhibit the court's ability to tailor dispositions to the needs of each juvenile offender. Such a holding also might result in the filing of more one-count delinquency petitions, potentially increasing congestion and unnecessary filings in the juvenile court. We do not believe that this construction would effectuate the intent of the legislature or the objective stated by our own supreme court. On the other hand, allowing the juvenile court to order one disposition for each count on which a juvenile is adjudicated delinquent provides more flexibility and discretion for juvenile courts.

We, therefore, hold that A.R.S. section 8–241(A) authorizes the juvenile court to order one disposition for *each count* that a juvenile offender is adjudicated delinquent. Here, however, the court's disposition order is unclear because it placed Appellant on JIPS upon his "release" from ADYTR.

The court's use of the term "release" is open to two interpretations. First, it could be interpreted as placing Appellant on JIPS only after he was discharged from ADYTR's jurisdiction pursuant to A.R.S. section 41–2820 (1992). Second, the disposition order also could be interpreted as placing Appellant on JIPS after he is released from a secure care facility.[1] In light of A.R.S. section 8–241(A) and our holding today, the first interpretation would constitute an appropriate order because the JIPS placement would occur only after Appellant was discharged from the jurisdiction of ADYTR.

The second interpretation, however, does not enjoy the same result. Pursuant to A.R.S. section 41–2818 (1992), Appellant could be released from a secure care facility and placed either in a community based residential treatment center, or under the care of his parents, a legal guardian, or an Arizona resident of "good moral character." In that

---

1. At the disposition hearing the juvenile court stated:

On Count III, misconduct with a weapon, the Court is going to place [Appellant] on [JIPS], with placement in a residential treatment cen- ter. [JIPS] shall not start on this count of weapon misconduct until [Appellant] *is released from a secured setting on the other two counts.* (Emphasis added.)

case, even though Appellant would have been released from a secure care facility, he would remain under the jurisdiction of ADYTR until this department discharged the juvenile. *See* A.R.S. § 41–2820. Thus, if Appellant was placed on JIPS when released from a secure care facility, both ADYTR and the probation department would exercise concurrent jurisdiction over him. Such a disposition is potentially unworkable and prone to confusion because Appellant would be subject to oversight by multiple departments. Moreover, there is an apparent conflict with A.R.S. section 8–241(A)(2)(e), which prohibits the juvenile court from imposing further directions as to placement by ADYTR. By placing Appellant on JIPS after he is released from a secure care facility but still under ADYTR's jurisdiction, the juvenile court effectively is directing ADYTR as to its placement of Appellant. This is prohibited.[2] Accordingly, we do not believe the juvenile court has the authority to order a disposition placing Appellant on JIPS while ADYTR continues to exercise jurisdiction over him.

## CONCLUSION

We hold that A.R.S. section 8–241(A) allows the juvenile court to order one disposition for each count that a juvenile is adjudicated delinquent. Because the disposition order is unclear, however, we remand this matter to the juvenile court for clarification of the order.

GERBER, P.J., and LEVI RAY HAIRE, J.[3], concur.

---

**2.** We note that "[f]rom and after September 30, 1995, the court may make further directions as to placement by the [ADYTR] concerning the child's length of stay in secure care." A.R.S. § 8–241(A)(2)(e) (Supp.1994). This further suggests that, prior to September 30, 1995, the legislature did not envision the juvenile court influencing the placement of a juvenile under the jurisdiction of ADYTR.

**3.** The Honorable Levi Ray Haire, a retired judge of the Court of Appeals, was authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 20.